IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Anass Nazih, | |
| *On behalf of himself and those similarly situated*, | Case No. 2:17-cv-947 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Café Istanbul of Columbus, LLC, Ismail Altinok, Ali Emre "John" Bektas, and Osman Saki, | |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Anass Nazih, on behalf of himself and all similarly-situated individuals, brings this action under 29 U.S.C. § 216(b) and Ohio law against Defendants Café Istanbul of Columbus, LLC, Ismail Altinok, John Bektas, and Osman Saki (collectively "Defendants"). This action seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60.

2.      Together, Defendants own and operate Café Istanbul at Easton Towne Center.

3.      Plaintiff worked for Defendants as a server at Café Istanbul.

4.     Throughout Plaintiff's employment, Defendants have repeatedly and willfully violated the FLSA and Ohio wage law by failing to pay servers and other tipped workers minimum wage.

5.     Throughout Plaintiff's employment, Defendants have repeatedly and willfully violated the FLSA and Ohio wage law by failing to pay servers and other tipped workers overtime wages for hours worked in excess of 40 hours per workweek.

6.     Defendants maintain a policy and practice of underpaying their servers in violation of the FLSA and Ohio law.

7.     All servers at Café Istanbul are subject to the same or similar employment policies and practices, including policies and practices with respect to wages paid, hours worked, and the tip credit.

8.     Plaintiff brings this action on behalf of himself and similarly situated current and formers servers of Defendants who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions by Defendants.

9.     Plaintiff brings this action on behalf of himself and similarly situated employees pursuant to Federal Rule of Civil Procedure 23 to remedy violations of Sections 34a, the OMFWSA, the Prompt Pay Act, and O.R.C. § 2307.60.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

11.     This Court has supplemental jurisdiction over Plaintiff's Ohio law claims under 28 U.S.C. § 1367.

12. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiff**

**Anass Nazih**

13. Plaintiff Anass Nazih resides in Columbus, Ohio.

14. At all times relevant herein, Plaintiff was an "employee" of Defendants as defined in the FLSA, the OMFWSA, and Section 34a.

15. Plaintiff has given written consent to join this action, a copy of which is attached to this Class Action Complaint.

**Defendants**

16. Each of the Defendants had control over Plaintiff and similarly situated employees' working conditions.

17. At all relevant times, Defendants have shared or co-determined those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated employees at Defendants' restaurants.

18. At all relevant times, Defendants have had direct or indirect control over the terms and conditions of Plaintiff's work and the work of similarly situated employees.

19. At all relevant times, Defendants possessed the authority to control the terms and conditions of Plaintiff's employment and the employment of similarly situated employees, and have exercised that authority.

3

20.     Defendants suffer or permit Plaintiff and other employees to work.

**Café Istanbul of Columbus, LLC**

21.     Defendant Café Istanbul of Columbus, LLC is a domestic limited liability company with its principal place of business in Ohio.

22.     Café Istanbul of Columbus, LLC is the entity that appears on the paystubs received by Plaintiff for the work he completed at Café Istanbul Easton.

23.     Upon information and belief, Café Istanbul of Columbus, LLC is owned and operated by Osman Saki, John Bektas, and Ismail Altinok.

24.     Osman Saki is an authorized representative of Café Istanbul of Columbus, LLC.

25.     Café Istanbul of Columbus, LLC is an "employer" of Plaintiff and similarly situated employees as that term defined by the FLSA, the OMFWSA, and Section 34a.

26.     Upon information and belief, Café Istanbul of Columbus, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all employees at all of its locations, including policies, practices and procedures relating to payment of minimum wages, overtime wages, timekeeping, and the tip credit.

27.     At all relevant times, Café Istanbul of Columbus, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

28.     At all relevant times, Café Istanbul of Columbus, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

29.     Café Istanbul of Columbus, LLC's gross revenue exceeds $500,000 per year.

4

**Ismail Altinok**

30. Ismail Altinok is an owner of Café Istanbul.

31. Ismail Altinok is a member of Café Istanbul of Columbus, LLC.

32. Upon information and belief, Ismail Altinok lives in the Columbus, Ohio area.

33. Ismail Altinok supervised and directed the employment of Plaintiff on a daily basis.

34. Ismail Altinok is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, and the OMFWSA because he owns and operates Café Istanbul, serves as a member of Café Istanbul, ultimately controls significant aspects of the Café Istanbul's day-to-day functions, and ultimately controls compensation of employees. 29 U.S.C. § 203(d).

35. Ismail Altinok operates Café Istanbul in conjunction with his partners, John Bektas and Osman Saki.

36. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had financial control over the operations at each of the named corporate defendants.

37. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has a role in significant aspects of Café Istanbul's day to day operations.

38. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had control over Defendants' pay policies.

39. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had power over personnel and payroll decisions at Café Istanbul, including but not limited to influence of server pay.

40. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had the power to hire, fire and discipline employees, including Plaintiffs and other servers.

41. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

42. At all times relevant, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had the power to transfer the assets and liabilities of Café Istanbul of Columbus, LLC.

43. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had the power to declare bankruptcy on behalf of Café Istanbul of Columbus, LLC.

44. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had the power to enter into contracts on behalf of Café Istanbul of Columbus, LLC.

45. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok has had the power to close, shut down, and/or sell Café Istanbul of Columbus, LLC.

46. At all relevant times, by virtue of his role as owner of Café Istanbul, Ismail Altinok had authority over the overall direction of Café Istanbul of Columbus, LLC and was ultimately responsible for its operations.

47. Café Istanbul of Columbus, LLLC functions for Ismail Altinok's profit.

48. Ismail Altinok has influence over how Café Istanbul can run more profitably and efficiently.

**John Bektas**

49. John Bektas is an owner of Café Istanbul.

50. John Bektas is a member of Café Istanbul of Columbus, LLC.

51.     Upon information and belief, John Bektas lives in the Columbus, Ohio area.

52.     John Bektas is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, and the OMFWSA because he owns and operates Café Istanbul, serves as a member of Café Istanbul, ultimately controls significant aspects of the Café Istanbul's day-to-day functions, and ultimately controls compensation of employees. 29 U.S.C. § 203(d).

53.     Plaintiff was sometimes required to clock in as "John Bektas" on occasion, and was never paid for that time.

54.     John Bektas operates Café Istanbul in conjunction with his partners, Ismail Altinok and Osman Saki.

55.     At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has had financial control over the operations at each of the named corporate defendants.

56.     At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has a role in significant aspects of Café Istanbul's day to day operations.

57.     At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has had control over Defendants' pay policies.

58.     At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has had power over personnel and payroll decisions at Café Istanbul, including but not limited to influence of server pay.

59.     At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has had the power to hire, fire and discipline employees, including Plaintiffs and other servers.

60. At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

61. At all times relevant, by virtue of his role as owner of Café Istanbul, John Bektas has had the power to transfer the assets and liabilities of Café Istanbul of Columbus, LLC.

62. At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has had the power to declare bankruptcy on behalf of Café Istanbul of Columbus, LLC.

63. At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has had the power to enter into contracts on behalf of Café Istanbul of Columbus, LLC.

64. At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas has had the power to close, shut down, and/or sell Café Istanbul of Columbus, LLC.

65. At all relevant times, by virtue of his role as owner of Café Istanbul, John Bektas had authority over the overall direction of Café Istanbul of Columbus, LLC and was ultimately responsible for its operations.

66. Café Istanbul of Columbus, LLLC functions for John Bektas's profit.

67. John Bektas has influence over how Café Istanbul can run more profitably and efficiently.

**Osman Saki**

68. Osman Saki is an owner of Café Istanbul.

69. Osman Saki is a member of Café Istanbul of Columbus, LLC.

70. Upon information and belief, Osman Saki lives in the Columbus, Ohio area.

71.     Osman Saki is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, and the OMFWSA because he owns and operates Café Istanbul, serves as a member of Café Istanbul, ultimately controls significant aspects of the Café Istanbul's day-to-day functions, and ultimately controls compensation of employees. 29 U.S.C. § 203(d).

72.     Plaintiff was sometimes required to clock in as "Osman Saki" on occasion, and was never paid for that time.

73.     Osman Saki operates Café Istanbul in conjunction with his partners, John Bektas and Ismail Altinok.

74.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has had financial control over the operations at each of the named corporate defendants.

75.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has a role in significant aspects of Café Istanbul's day to day operations.

76.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has had control over Defendants' pay policies.

77.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has had power over personnel and payroll decisions at Café Istanbul, including but not limited to influence of server pay.

78.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has had the power to hire, fire and discipline employees, including Plaintiffs and other servers.

79.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

80.     At all times relevant, by virtue of his role as owner of Café Istanbul, Osman Saki has had the power to transfer the assets and liabilities of Café Istanbul of Columbus, LLC.

81.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has had the power to declare bankruptcy on behalf of Café Istanbul of Columbus, LLC.

82.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has had the power to enter into contracts on behalf of Café Istanbul of Columbus, LLC.

83.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki has had the power to close, shut down, and/or sell Café Istanbul of Columbus, LLC.

84.     At all relevant times, by virtue of his role as owner of Café Istanbul, Osman Saki had authority over the overall direction of Café Istanbul of Columbus, LLC and was ultimately responsible for its operations.

85.     Café Istanbul of Columbus, LLLC functions for Osman Saki's profit.

86.     Osman Saki has influence over how Café Istanbul can run more profitably and efficiently.

## FACTS

### CLASSWIDE FACTUAL ALLEGATIONS

87.     During all relevant times, Defendants have operated Café Istanbul in Easton Town Center in Columbus, Ohio.

88.     Plaintiff and the similarly situated employees he seeks to represent work or worked for Defendants as servers.

89.     All servers employed by Defendants over the last three years had essentially the same job duties – to serve food and drinks to customers at Café Istanbul.

10

90.     Defendants paid servers at "tipped minimum wage"—minimum wage minus the maximum allowable tip credit—for each hour for which they received compensation.

91.     Defendants failed to satisfy all of the requirements in taking a tip credit from servers' wages. Specifically, Defendants failed to notify servers that they would be taking a tip credit from their wages, failed to compensate servers for all hours worked, misappropriated servers' tips and forced servers to share tips with managerial and/or other employees who are not eligible to share in a tip pool, required servers to spend more than 20% of their time at work in a non-tipped capacity, and failed to pay proper overtime to employees who worked greater than 40 hours in a week.

92.     Defendants failed to inform servers of the tip credit requirements of the FLSA.

93.     At all relevant times, Defendants failed to compensate servers for all hours worked.

94.     No matter how many how servers worked, they were compensated for a lesser number of hours, as determined by Defendants.

95.     Servers were occasionally required to clock in as other people, not themselves, and were not compensated for this time.

96.     As a result of Defendants' policy and practice of failing to pay employees for all hours worked, servers were paid less than tipped minimum wage.

97.     Defendants required servers to pay a certain percentage of their total sales directly to the restaurant out of the tips they received.

98.     Defendants required servers to pay out 2% of their sales out of their tips to the restaurant itself.

11

99.     Plaintiff sometimes collected servers' 2% tip out at the end of the night in order to give it to Defendants.

100.    Defendants required servers to complete cleaning duties at the beginning and/or end of each shift which often encompassed more than 20% of their time at work.

101.    Servers' pre- and post-shift side work often lasted 1-3 hours total.

102.    Defendants required servers to complete overtime work "off the clock."

103.    Servers were required to pay for their own uniforms, which consisted of black slacks, a black button down shirt, a black apron, and black non-slip shoes. Servers could purchase an apron from Defendants for $7.00.

104.    When servers prepared to-go orders and the customer left a tip, Defendants retained it for themselves.

105.    Servers occasionally had to work parties for which Defendants retained all or part of their tips.

106.    Defendants have failed to properly take a tip credit from servers' wages.

107.    Defendants have taken unlawful "kickbacks" from servers' wages.

108.    Defendants have failed to pay servers for all hours worked.

109.    Defendants have willfully failed to pay federal and Ohio state minimum wage and overtime to Plaintiff and similarly situated servers.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

110.    Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

111. Plaintiff worked as a server at Café Istanbul in Easton Town Center from approximately 2013 until early September 2017.

112. As a server at Café Istanbul, Plaintiff's primary job duties included waiting on guests and completing side work.

113. Plaintiff typically worked 40 to 60 hours per week.

114. As a server at Café Istanbul, the Defendants did not record all of the hours Plaintiff worked. They shorted his time in at least three ways:

    a. first, they simply deducted hours from Plaintiff's time records that were generated based on when he signed in and out of the Point of Sale system;

    b. second, they required Plaintiff to complete side work at the beginning and end of each shift either before he signed into the Point of Sale system or after he signed out of the Point of Sale system; and

    c. third, the Defendants required Plaintiff and other servers to sign into the Point of Sale system under the names of owners and managers, including but not limited to Osman Saki, John Bektas, and Emine Childs.

115. As a result, Plaintiff's paystub consistently indicated that he worked fewer hours than he actually worked.

116. No matter what his paystub indicated, however, Plaintiff was never paid any wages by Café Istanbul. He received a paystub every two weeks showing the number of hours they claimed he worked, but he was never actually paid any wages by Defendants.

117. Plaintiff's hours worked always worked out to be enough to pay all or some of the taxes on Plaintiff's tips, but never more.

118. No matter what the Defendants' records showed, they did not pay Plaintiff any hourly wages at all.

119. Plaintiff was paid in cash tips every day.

120. As a server for Café Istanbul, neither the restaurant nor any of its employees ever informed Plaintiff of their intention to take a "tip credit" from his wages, nor did they otherwise inform him of the tip credit provisions of the Fair Labor Standards Act.

121. As a server for Café Istanbul, Plaintiff was required to contribute 2% of his sales to the restaurant out of his tips. This money was used to pay the Defendants' other obligations.

122. As a server for Café Istanbul, Plaintiff was required to box up to-go orders and prepare them for pick up. When customers left a tip on a to-go order, the Defendants kept it.

123. As a server at Café Istanbul, Plaintiff was required to pay out-of-pocket for his work uniform, which included black slacks, a black shirt, a black apron, and black non-slip shoes. For example, Plaintiff and other servers were required to pay $7.00 to the Defendants for an apron.

124. As a server at Café Istanbul, Plaintiff was occasionally required to pick up supplies, such as food items that the restaurant had run out of, but he was not reimbursed for these expenses. This work was often completed off the clock.

125. As a server at Café Istanbul, Plaintiff had to complete significant side work. For example, at the beginning of his shift, he and his co-workers spent approximately one hour cleaning up and preparing the dining room for customers. At the end of the shift, Plaintiff and others are required to clean and polish the glasses and silverware. On occasion, they are also required to complete deeper cleaning, such as power-washing the patio, cleaning chairs, and running errands.

126.    As a server at Café Istanbul, Plaintiff was regularly required to work large parties for which he did not receive tips (because it was included in the bill) nor did he receive any hourly wages from the Defendants.

## COLLECTIVE ACTION ALLEGATIONS

127.    Plaintiff brings the First and Second Counts under 29 U.S.C. 216(b) on behalf of himself and a collective consisting of:

> All current and former servers employed by Defendants in the State of Ohio between October 24, 2014 and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

128.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully failing to properly take a tip credit from the wages of Plaintiff and the FLSA Collective, refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and time-and-one-half overtime pay for hours worked in excess of 40 per workweek, and taking "kickbacks" from the wages of Plaintiff and the FLSA Collective. Plaintiff's claims are essentially the same as those of the FLSA Collective.

129.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collective.

130.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

131.    Defendants are aware or should have been aware that, in order to take a tip credit from the wage of Plaintiff and the FLSA Collective, the federal law required them to inform Plaintiff and the FLSA Collective of the tip credit provisions of the FLSA, and prohibited them

from requiring Plaintiff and the FLSA Collective to share tips with employees who are not engaged in customer service, including the restaurant itself.

132.    Defendants are aware or should have been aware that federal law required them to reimburse workers for expenses relating to "tools of the trade," such as, among other things, uniforms.

133.    Defendants are aware or should have been aware that federal law required them to pay non-exempt employees an overtime premium for hours worked over 40 per workweek.

134.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

135.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

136.    The FLSA Collective members are readily identifiable and ascertainable.

137.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names, addresses, email addresses, and phone numbers are readily available from Defendants' records.

138.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## **CLASS ACTION ALLEGATIONS**

139.    Plaintiff brings the Third, Fourth, Fifth, and Sixth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former servers employed by Defendants in the State of Ohio between October 24, 2014 and the date of final judgment in this matter ("Rule 23 Class").

16

140.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

141.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

142.    The Rule 23 Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

143.    There are more than 50 Rule 23 Class members.

144.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

145.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to properly take a tip credit from their wages.

146. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with OMFWSA, Section 34a, and O.R.C. § 4113.15.

147. Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

148. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

149. By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

150. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

151. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

152. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

153.    Upon information and belief, Defendants and other employers throughout the state violate the OMFWSA, Section 34a, and O.R.C. § 4113.15. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

154.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

155.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.    Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

b.    Whether Defendants paid Plaintiff and the Rule 23 Class for all hours worked;

c.    Whether Defendants properly informed Plaintiff and the Rule 23 Class of their intention to take a tip credit;

d.    Whether Defendants required Plaintiff and the Rule 23 Class to share tips with employees or others who were not permitted to share in a tip pool;

e.    Whether Plaintiff and the Rule 23 Class spent more than 20% of their time at work in a non-tipped capacity;

f.    Whether Defendants properly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 each workweek;

g.    Whether Defendants took deductions from the wages of Plaintiff and the Rule 23 Class that caused their wages to drop below minimum wage;

h.    Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15;

i.    Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

j.    The nature and extent of class-wide injury and the measure of damages for those injuries.

156.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

157.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

158.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

159.    Defendants impermissibly took a tip credit from the wages of Plaintiff and the FLSA Collective.

160.    Upon information and belief, Defendants did not provide Plaintiff and the FLSA Collective with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

161.    Defendants impermissibly required Plaintiff and the FLSA Collective to share tips with the restaurant itself.

162.    Defendants took "kickbacks" from the wages of Plaintiff and the FLSA Collective.

163.    Defendants failed to pay Plaintiff and the FLSA Collective for all hours worked.

164.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

165.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

166.     As a result of Defendants' violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Overtime Wages – Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

167.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

168.     Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

169.     Defendants required Plaintiff and the FLSA Collective to work overtime hours off the clock.

170.     By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

171.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

### Count 3
### Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a
### (On Behalf of Plaintiff and the Rule 23 Class)

172.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

173.     Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by failing to properly take a tip credit from their wages, failing to pay for all hours worked, and taking "kickbacks" from the wages of Plaintiff and the Rule 23 Class.

174.     Article II § 34a of the Ohio Constitution requires that employees be paid not less than minimum wage as determined by an inflation index for all hours worked.

175.     By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the Ohio Constitution, Article II, § 34a.

176.     As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, an additional two times unpaid wages in damages under Section 34a, costs, and attorneys' fees.

### Count 4
**Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act**
**(On Behalf of Plaintiff and the Rule 23 Class)**

177.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

178.     Plaintiff and the Rule 23 Class worked more than forty hours in one or more workweeks.

179.     Defendants did not compensate Plaintiff and the Rule 23 Class for the hours they worked over 40 hours per week.

180.     By not paying Plaintiff and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the OMFWSA.

181.     As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid overtime wages, costs, and attorneys' fees.

## Count 5
### Untimely Payment of Wages – O.R.C. § 4113.15
### (On Behalf of Plaintiff and the Rule 23 Class)

182.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

183.    During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

184.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages, including unpaid overtime, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

185.    Plaintiff and the Rule 23 Class's unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

186.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

187.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

## Count 6
### Damages Pursuant to O.R.C. § 2307.60
### (On Behalf of Plaintiff and the Rule 23 Class)

188.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

189.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

190.     By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

191.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

192.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiff Anass Nazih prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.     Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.     A declaratory judgment that the practices complained of herein are unlawful under Section 34a, the OMFWSA, and O.R.C. § 4113.15.

F.     An award of unpaid minimum wages and overtime wages due under Section 34a and the OMFWSA.

G.     An award of damages under Section 34a, based on Defendants' failure to pay minimum wages pursuant to Section 34a, calculated as an additional two times of back wages.

H.     Liquidated damages under O.R.C. § 4113.15.

I.     Compensatory and punitive damages under O.R.C. § 2307.60.

J.     An award of prejudgment and post-judgment interest.

K.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.     Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

/s/ Andrew Kimble
Andrew Biller (0081452) (Lead Counsel)
Andrew Kimble (0093172)
Eric Kmetz (092369)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
(*abiller@msdlegal.com*)
(*akimble@msdlegal.com*)
(*ekmetz@msdlegal.com*)
www.msdlegal.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

  /s/ Andrew Kimble_____
Andrew Kimble