# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ANASS NAZIH, | : |
| **Plaintiff,** | : Case No. 2:17-cv-947 |
| | : |
| v. | : JUDGE ALGENON L. MARBLEY |
| | : |
| CAFÉ ISTANBUL OF COLUMBUS, LLC, *et al.*, | : Magistrate Judge Deavers |
| | : |
| **Defendants.** | : |

## OPINION & ORDER

This matter is before the Court on Plaintiff's Motion to Conditionally Certify an FLSA Collective Action and to Authorize Notice ("Motion to Conditionally Certify"). (ECF No. 4). For the reasons set forth below, Plaintiff's Motion to Conditionally Certify is **GRANTED**.

### I. BACKGROUND

#### A. Factual Background

Plaintiff Anass Nazih and Opt-In Plaintiff Saad Bouhajra worked as servers at Defendant Café Istanbul of Columbus, LLC ("Café Istanbul"), a restaurant located in Easton Town Center. (ECF No. 4-1 at ¶ 2; ECF No. 4-2 at ¶ 2). Café Istanbul is or has been owned and operated by Defendants Ismail Altinok, Ali Emre Bektas (also known as John Bektas), and Osman Saki. (ECF No. 4-1 at ¶ 19; ECF No. 4-2 at ¶ 20). According to Mr. Nazih and Mr. Bouhajra, Defendants did not properly compensate them for all time worked at the restaurant. Specifically, they declared that Defendants shorted their time in three ways: (1) simply deducting hours from their time records generated by the Point of Sale ("POS") system; (2) requiring them to complete side work such as cleaning before clocking in or after clocking out; and (3) requiring them to sign in to the POS system under the names of owners and managers. (ECF No. 4-1 at ¶¶ 7, 17; ECF No. 4-2 at

¶¶ 7, 18). Mr. Nazih and Mr. Bouhajra stated that they were never paid any actual wages, but instead received only tips from their customers. (ECF No. 4-1 at ¶¶ 9, 10; ECF No. 4-2 at ¶¶ 9, 10). They further aver that no one at Café Istanbul informed them that a "tip credit" would be taken from their wages, but their paystubs indicate Defendants paid them $4.08 hour. (ECF No. 4-1 at ¶ 12; ECF No. 4-2 at ¶ 12). Mr. Nazih and Mr. Bouhajra further declare that Defendants engaged in a number of other practices, including requiring servers to pay 2% of their sales to the restaurant, keeping the tips made on to-go orders, requiring servers to work for large parties with no tip, requiring employees to pay for their uniforms, and requiring them to occasionally pick up food or alcohol for the restaurant and not reimbursing them. (ECF No. 4-1 at ¶¶ 13-16, 18; ECF No. 4-2 at ¶¶ 14-17, 19).

### B. Procedural History

Mr. Nazih commenced this collective and class action against Defendants on October 26, 2017, alleging that they violated the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a, the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Section 4113.15, and Ohio Revised Code Section 2307.60. (ECF No. 1). Mr. Bouhajra opted in to the lawsuit on November 2, 2017. (ECF No. 3). The next day, on November 3, 2017, Mr. Nazih filed the instant Motion to Conditionally Certify. (ECF No. 4). The Motion is fully briefed and ripe for decision.

## II. LEGAL STANDARD

The FLSA provides that a court may certify a collective action brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Similarly situated employees are permitted to "opt into" the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The lead

plaintiff bears the burden to show that the proposed class members are similarly situated to the lead plaintiff. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). The FLSA does not define "similarly situated" and neither has the Sixth Circuit. *Id.* But notably, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than plaintiffs seeking class certification under Federal Rule of Civil Procedure 23. *Id.* District courts conduct a two-phase inquiry to determine whether plaintiffs are similarly situated: conditional and final certification. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012).

In the first phase, the conditional-certification phase, conducted at the beginning of the discovery process, named plaintiffs need only make a "modest factual showing" that they are similarly situated to proposed class members. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Comer*, 454 F.3d at 547). The standard at the first step is "fairly lenient . . . and typically results in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). Courts generally consider factors such as "employment settings, individual defenses, and the fairness and procedural impact of certification." *Frye*, 495 F. App'x at 672 (citing *O'Brien*, 575 F.3d at 584). Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Showing a "unified policy" of violations is not required. *Id.* at 584. The named plaintiff "need only show that his position is similar, not identical, to the positions held by the putative class members." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867-68 (S.D. Ohio 2011) (alteration omitted); *see also Comer*, 454 F.3d at 546-57.

At this stage, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner*, 110 F. Supp. 3d at 765 (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). In determining conditional certification, courts have considered "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio 2014) (quoting *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)). If conditional certification is granted, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015).

At the second stage, the final certification phase, conducted after the conclusion of discovery, courts "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. At this stage, the court has much more information on which to base its decision of whether the proposed plaintiffs are similarly situated and, "as a result, it employs a stricter standard." *Id.* (alteration, quotation marks, and citation omitted).

### III. ANALYSIS

#### A. Similarly Situated Analysis

Mr. Nazih seeks to conditionally certify the following collective action class under the FLSA:

> All servers or other tipped employees who worked at Café Istanbul in Easton Town Center at any time during the three years prior to the granting of this motion to the present.

(ECF No. 4 at 8). Mr. Nazih contends that he is similarly situated to the potential class because Defendants applied a "unified policy" to the entire class: they required tipped employees to make

4

tip-out payments to the restaurant, failed to inform tipped employees of the tip credit provisions of the FLSA, failed to compensate tipped employees for all hours worked, and required tipped employees to cover expenses that benefitted Café Istanbul. (*Id.*). Defendants counter that Mr. Nazih is not similarly situated to the putative class members, but their opposition focuses on the merits of the FLSA dispute, contending that Mr. Nazih was indisputably paid wages and there is no tip pool at Café Istanbul. (ECF No. 11 at 1, 3). Defendants also argue that Mr. Nazih failed to clock in and clock out on numerous occasions for a variety of reasons, pointing to the affidavit of Mr. Altinok, and therefore is not suited to be a representative of the collective putative class. (*Id.* at 2).

At this stage, the Court finds that Mr. Nazih has satisfied the "modest factual showing" required to show that he is similarly situated to proposed class members. *See Waggoner*, 110 F. Supp. 3d at 764. Mr. Nazih submitted a sworn declaration from himself and a sworn declaration from Mr. Bouhajra, both asserting that Defendants deducted hours from their time records, required them to complete work off the clock, required them to sign in to the POS system under the names of owners and managers, did not pay them any wages, took a "tip credit" without informing them of the relevant FLSA provisions, required them to pay 2% of their sales to the restaurant, kept the tips made on to-go orders, required them to work for large parties with no tip, and required them to pay for their uniforms and pick up food or alcohol for the restaurant with no reimbursement. (ECF No. 4-1 at ¶¶ 7, 9, 10, 12-18; ECF No. 4-2 at ¶¶ 7, 9, 10, 12, 14-19). Both Mr. Nazih and Mr. Bouhajra declared that it was their understanding that all servers at Café Istanbul were subject to the same or similar pay policies that they were subjected to. (ECF No. 4-1 at ¶ 20; ECF No. 4-2 at ¶ 21). Mr. Nazih stated that he knows other servers were subjected to the same policies because he was sometimes required to collect each servers' 2% tip-out to the

restaurant and give it to Defendants.  (ECF No. 4-1 at ¶ 20).  Mr. Nazih also stated that he spoke to at least two other servers about being required to tip-out the restaurant itself and being paid only in tips.  (*Id.* at ¶ 21).  Mr. Bouhajra stated that he complained about his compensation to Mr. Altinok and Mr. Altinok "made clear that was the way Café Istanbul compensated all of its employee."  (ECF No. 4-2 at ¶ 22).  He further declared that Mr. Altinok explained to him that Café Istanbul hires undocumented workers because they are less likely to complain about minimum wage violations and lack of other employment benefits.  (*Id.* at ¶ 23).

These sworn statements by Mr. Nazih and Mr. Bouhajra are sufficient at this "fairly lenient" stage to show that Mr. Nazih is similarly situated to representative class members because they "suffer from a single, FLSA-violating policy."  *See Comer*, 454 F.3d at 547 (internal quotations omitted); *O'Brien*, 575 F.3d at 585; *see also Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 896 (S.D. Ohio 2016) (Marbley, J.) (granting motion for conditional collective action certification and noting that "in at least one instance a court in this district has certified a class based only on two declarations"); *Flexter v. Action Temp. Servs.*, No. 2:15–cv–754, slip op. at 9 (S.D.Ohio Mar. 25, 2016) (Smith, J.) (denying a conditional-certification motion but noting that "[i]n some instances, two declarations may be sufficient to show that other employees are similarly situated to the plaintiff and FLSA conditional certification is appropriate" and that "[o]ne such instance might arise where a declarant has personal knowledge of widespread violations").

Defendants' arguments to the contrary are unavailing.  As for their argument that Café Istanbul does pay wages and does not have a tip pool, such contentions go to the merits of the FLSA dispute and are thus not proper to consider at the conditional certification stage.  *See Waggoner*, 110 F. Supp. 3d at 765 ("During this preliminary stage, a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility.")

6

(citing *Swigart*, 276 F.R.D. at 214). Their remaining argument, that Mr. Nazih failed to clock out on numerous occasions and therefore is not an adequate representative, relies solely on Mr. Altinok's affidavit, and this Court has held that affidavits by defendants are "of little evidentiary value at the conditional-certification stage" because plaintiffs have not had an opportunity to depose the individuals who submitted affidavits and "a balancing of Plaintiffs' and Defendants' competing affidavits would require credibility and factual determinations and is thus improper at this time." *Myers*, 201 F. Supp. 3d at 891-92. The Court therefore finds that conditional certification of the proposed class is appropriate. Defendants, of course, have the ability to file a motion for decertification at a later date if discovery reveals that Mr. Nazih is not similarly situated to the collective class.

### B. Notice

Having conditionally certified the class, this Court has the authority to supervise notice to potential plaintiffs. *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 870 (S.D. Ohio 2011) (citing *Hoffman-La Roche*, 493 U.S. 165, 172 (1989)). By "monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 897–98 (S.D. Ohio 2018) (quoting *Hoffman-La Roche*, 493 U.S. at 172)). The Court may facilitate notice to the putative class "so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Swigart*, 276 F.R.D. at 214. Plaintiffs ask for authorization to send the notice attached as Exhibit 6 to the Motion to Conditionally Certify to the putative class members. (ECF No. 4-6). Aside from an objection to allowing the opt-in plaintiffs to proceed anonymously, discussed below, Defendants do not object to the substance of the notice. (ECF No. 11 at 3). Upon review, the Court finds that the substance of the notice, with the exception

of the references to anonymity, is timely, accurate, and informative. The notice specifically informs putative class members that "the Court takes no position regarding the merits of the claims or defenses." (ECF No. 4-6 at 3). In the absence of specific objections, the substance of the notice is approved, with the exception of the portions referencing the potential class members' ability to proceed anonymously.

1. Request for Anonymity

Plaintiffs contend that the putative class members should be permitted to opt-in anonymously because many of the members are undocumented workers, and may fear that participating in a legal action could trigger adverse immigration consequences. (ECF No. 4 at 13). They further argue that potential class members may be reluctant to come forward for fear that joining a lawsuit will have negative consequences on future employment opportunities. (*Id.* at 14). Defendants oppose the request to allow opt-in plaintiffs to proceed anonymously, arguing that there are no unique circumstances in this matter and the plaintiffs do not have any valid safety concerns or need for protection. (ECF No. 11 at 3).

As a general rule, all parties must be named in a lawsuit. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). Courts thus "start from the premise that proceeding pseudonymously [or anonymously] is the exception rather than the rule." *Doe v. Franklin Cty., Ohio*, No. 2:13-CV-00503, 2013 WL 5311466, at *2 (S.D. Ohio Sept. 20, 2013). The Sixth Circuit, however, recognizes that plaintiffs may be excused from identifying themselves in certain circumstances. *Id.* The question this Court must answer is "whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings." *Id.* In this analysis, courts in the Sixth Circuit consider:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity;
> (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the

>utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id.* (internal quotations omitted). Further, "when determining whether to permit a plaintiff to proceed pseudonymously, it is also relevant to consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case." *Malibu Media, LLC v. Doe*, No. 1:14-CV-493, 2015 WL 268995, at *5 (S.D. Ohio Jan. 21, 2015) (quoting *Citizens for a Strong Ohio v. Marsh,* 123 F. App'x 630, 636–37 (6th Cir.2005)). "Leave to proceed pseudonymously is within the discretion of the Court." *Doe v. Warren Cty., Ohio*, No. 1:12-CV-789, 2013 WL 684423, at *2 (S.D. Ohio Feb. 25, 2013).

Here, the Court, in its discretion, allows the opt-in plaintiffs to proceed anonymously with respect to the public, but will require them to reveal their identities to Defendants under seal. The Court recognizes the need to protect the rights of undocumented workers, an exceptionally vulnerable population. As the Ninth Circuit aptly explained:

>Many of these workers are willing to work for substandard wages in our economy's most undesirable jobs. While documented workers face the possibility of retaliatory discharge for an assertion of their labor and civil rights, undocumented workers confront the harsher reality that, in addition to possible discharge, their employer will likely report them to the INS and they will be subjected to deportation proceedings or criminal prosecution. . . . As a result, most undocumented workers are reluctant to report abusive or discriminatory employment practices.

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064–65 (9th Cir. 2004) (internal citations omitted); *see also Castillo v. Morales, Inc.*, No. 2:12-CV-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) ("Workers who lack legal immigration status may fear that participating in a legal action could trigger adverse immigration consequences."). In this case, Mr. Nazih and Mr. Bouhajra both submitted sworn statements that Defendants intentionally hires undocumented workers because they are less likely to complain about minimum wage violations. (ECF No. 4-1 at ¶ 22; ECF No. 4-2 at ¶ 23). Indeed, Mr. Bouhajra stated that Mr. Altinok told him so directly.

(ECF No. 4-2 at ¶23). Both Mr. Nazih and Mr. Bouhajra declared that they are aware of several co-workers who are illegal aliens and have expressed fear about asserting their wage and hour rights. (ECF No. 4-1 at ¶ 23; ECF No. 4-2 at ¶ 25). The Court therefore finds that opt-in plaintiffs do have a strong interest in not disclosing their identities. While the public has an interest in open judicial proceedings, the Court finds that on balance in this case the potential plaintiffs' need for anonymity substantially outweighs the presumption of open proceedings, particularly given that the identities of the proposed class representative, Mr. Nazih, and one opt-in plaintiff, Mr. Bouhajra, are not concealed from the public, preserving the public's ability to scrutinize the judicial proceeding.

The Court, however, must also consider "whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case." *Malibu Media*, 2015 WL 268995, at *5. The Court finds that not knowing the identity of its party opponents "is clearly insufficient information." *Id.* (holding that "at a bare minimum, counsel must have full access to the opposing party's information and identity"). Indeed, without knowing the identity of the opt-in plaintiffs, Defendants will be prejudiced because they will not be able to engage in meaningful discovery on whether Mr. Nazih is an adequate representative of the proposed class action. *See Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264, 276–77 (E.D.N.Y. 2015) ("[W]ithout disclosing the Plaintiffs' identities, the Court finds that the Defendants will clearly be prejudiced because they will not be able to engage in meaningful discovery on both the merits of the Plaintiffs' claims and whether the unnamed Plaintiffs will qualify as adequate representatives of the proposed class action."); *see also Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004) (affirming the district court's decision to allow Plaintiffs to litigate pseudonymously with respect to third parties and rejecting defendant's arguments that the decision

hindered its ability to make full discovery because the protective order "placed no limitation on defense counsel's scope of discovery"); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1072 (9th Cir. 2000) (recognizing "that at some point . . . in the proceedings it may be necessary to reveal plaintiffs' identities to defendants so that defendants may refute individualized accusations of FLSA violations").

The Court therefore will require Plaintiffs to disclose the identity of opt-in plaintiffs to the Defendants, but will prohibit Defendants from disclosing the identities to the general public or any third parties.  Plaintiffs are hereby **DIRECTED** to submit a proposed protective order consistent with this decision to United States Magistrate Judge Deavers for approval within **THIRTY (30) DAYS** from the date of this Order.  In the meantime, the parties are hereby **DIRECTED** to submit two versions of any documents they wish to file that contain the names of the opt-in plaintiffs: one sealed version with the names of the opt-in plaintiffs that will be available only to the Court and the parties, and one version replacing the opt-in plaintiffs' names with pseudonyms that will be publicly available on the docket.  This procedure balances the privacy interests of the putative class members, the public's interest in open judicial proceedings, and the Defendants' need for sufficient information upon which to base their arguments. *See, e.g., Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d at 276–77 ("As the Plaintiffs correctly point out, when trying to balance the different interests involved in cases such as these, courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public."); *Whistleblower 14106-10W v. C.I.R.*, 137 T.C. 183, 192 (2011) ("Permitting a litigant to proceed anonymously, unlike sealing the record, preserves in large measure the public's ability to scrutinize judicial functioning since

[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them.") (internal quotations omitted).[1]

### 2. Method of Disseminating Notice

Plaintiffs seek to send notice of the lawsuit to all putative class members via mail, electronic mail, and text message. (ECF No. 4 at 13). This Court has "discretion in deciding how notice is disseminated." *Staggs v. Fuyao Glass Am., Inc.*, No. 3:17-CV-191, 2018 WL 840178, at *2 (S.D. Ohio Feb. 8, 2018); *see also Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017 (the court has "wide latitude in determining the method or methods of notice that will reach the potential opt-in plaintiffs"). Courts traditionally "approve only a single method for notification unless there is a reason to believe that method is ineffective." *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 879 (S.D. Ohio 2017). The trend in the Southern District of Ohio, however, "is to allow notice by mail and email to ensure that putative class members receive notice of the pending action." *Hall*, 299 F. Supp. 3d at 899–900; *see also Bradenburg*, 2017 WL 3500411 at *5 (allowing notice to be sent to all current and former employees via electronic mail and postal mail). Following the trend, this Court finds that notice by mail and email is appropriate in this case.

The Court notes that some courts in this district have declined to authorize the use of text messages unless notice through the other methods was ineffective. *See, e.g.*, *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1044–45 (S.D. Ohio 2018) ("Plaintiff may not, however, notify any potential opt-in plaintiff of the lawsuit by text message unless Plaintiff can show that notice by postal and electronic mail is insufficient as to any given potential opt-in plaintiff—in other words,

---

[1] The Court notes that Plaintiffs also argue that opt-in plaintiffs fear retaliation from the Defendants themselves. (ECF No. 4 at 14). This argument, however, would be applicable to all plaintiffs in all wage and hour cases and the Court finds it unpersuasive.

12

that postal and electronic notices to a particular individual were returned as undeliverable."); *Staggs*, 2018 WL 840178, at *2 ("A text message of the Reduced Notice . . . is to be sent to the cell phone of any Putative Class Member whose Notice and Consent sent through the U.S. Mail comes back undeliverable."); *Casarez v. Producers Serv. Corp.*, No. 2:17-CV-1086, 2018 WL 2389721, at *8 (S.D. Ohio May 25, 2018) (reviewing other Southern District of Ohio opinions and holding "likewise" that "in consideration of the remedial purpose of the FLSA and the likelihood that the addresses of former employees in Defendant's database are outdated, Plaintiff may send a text message upon a showing that notice by postal and electronic mail is insufficient as to any given potential opt-in plaintiff) (internal citations omitted).

In each of the cited cases, however, defendants specifically objected to the use of text messages. Defendants have made no such objection here. Additionally, courts in other districts have allowed the use of text messages in conjunction with email and postal mail. *See, e.g.*, *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication."). Given the Defendants' lack of objection and the Plaintiffs' declaration stating that Defendants themselves communicate with employees via text messaging (ECF No. 4-1 at ¶ 25), the Court approves the request to send the notice via text message, email, and postal mail.[2]

---

[2] Plaintiffs have proposed a shortened version of the notice for text message (ECF No. 4 at 11-12) and electronic message (ECF No. 4-7). The Court finds the text message notice fair and appropriate and approves it as written. The Court finds the e-mail notice fair and appropriate except for the reference to being able to sign the consent form anonymously, and approves the remainder of the email notice.

3. Opt-In Period

Plaintiffs request that the opt-in period stay open for 90 days. (ECF No. 4 at 13). Defendants do not specifically object to the length of the opt-in period. In the absence of an objection, and "because 90 days is a standard notice period and fair in this case," the Court approves the 90-day opt-in period. *See Smith v. Generations Healthcare Servs. LLC*, No. 2:16-CV-807, 2017 WL 2957741, at *7 (S.D. Ohio July 11, 2017).

4. Disclosure of Names and Contact Information

Finally, Plaintiffs request an order directing Defendants to produce a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, dates of employment, and job titles for members of the putative class within 15 days. (ECF No. 4 at 15). Defendants do not specifically object to providing any of the requested information, or to the amount of time Plaintiffs seek. This Court has found similar disclosures to be appropriate. *See Staggs*, 2018 WL 840178, at *2 (ordering Defendant to produce a list of all putative class members "including their names, positions of employment, last-known mailing addresses, last-known telephone numbers, email addresses, work locations, and dates of employment . . . within 14 days of the Court's Order granting this Motion."). The Court therefore grants the requested disclosure of names and contact information.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Plaintiff's Motion to Conditionally Certify (ECF No. 4) and conditionally certifies the following collective action class:

> All servers or other tipped employees who worked at Café Istanbul in Easton Town Center at any time during the three years prior to the granting of this motion to the present.

The Court **APPROVES** the substance of the proposed Notice and Consent Form (ECF No. 4-6), Email (ECF No. 4-7) and Text Message (ECF No. 4 at 11-12), with the exception of all references

to the opt-in plaintiffs' ability to proceed anonymously with respect to the Defendants, which must be **STRICKEN**. The Court hereby **ORDERS** the Plaintiffs to submit a revised Notice, Consent Form, and Email striking the proposed references to anonymity and making clear that opt-in plaintiffs' identity will be shared with Defendants but not third-parties within **SEVEN (7) DAYS** from the date of this Order. Defendants shall have **SEVEN (7) DAYS** after such revised notice is submitted to object to the language regarding anonymity. The revisions and any objections to the notices shall be limited to the language regarding anonymity, as the Court has approved the remainder of the notices. Once the Court approves the revised notices, Plaintiffs are permitted to send notice via first class mail, email, and text message. Putative class members will have ninety (90) days to opt into the case and will be allowed to proceed pseudonymously on the public record, but their identities will be shared with the Court and the Defendants under seal.

In light of this decision, the Clerk of Courts is hereby **DIRECTED** to remove Document Number 11 from the public docket. Defendants are **DIRECTED** to re-file their Memorandum in Opposition to Plaintiff's Motion to Conditionally Certify an FLSA Collective Action and to Authorize Notice (ECF No. 11) without the Annual Reconciliations exhibit, pages 9-14 (PAGE ID # 130-135). Defendants are further **DIRECTED** to re-file one copy of Annual Reconciliations Exhibit (pages 9-14) as is **UNDER SEAL**, and file one copy with the names of all employees other than Mr. Nazih and Mr. Bouhajra **REDACTED** within **SEVEN (7) DAYS** from the date of this Order. Plaintiffs are hereby **DIRECTED** to submit a proposed protective order consistent with this decision to United States Magistrate Judge Deavers for approval within **THIRTY (30) DAYS** from the date of this Order.

Finally, Defendants are hereby **ORDERED** to produce to Plaintiffs a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, dates of

employment, and job titles for members of the putative class within **FIFTEEN (15) DAYS** from the date of this Order.

**IT IS SO ORDERED.**


     **/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 11, 2018**