IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Anass Nazih, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> Café Istanbul of Columbus, LLC, *et al.*, <br><br> Defendants. | Case No. 2:17-cv-947 <br><br> Judge Algenon L. Marbley <br><br> Magistrate Judge Elizabeth Preston Deavers |

UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiffs ask that the Court grant final approval to the parties' Settlement Agreement, attached as Exhibit 1, and, at the conclusion of the settlement process, dismiss the case with prejudice. Defendants do not oppose this motion. The proposed Settlement Agreement resolves each Plaintiff's individual claims.

Respectfully submitted,

*/s/ Phil Krzeski*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

## Memorandum in Support of
## Plaintiff's Motion for Settlement Approval

1. **Introduction**

The parties seek the Court's approval of this wage and hour settlement because it is fair, adequate, and reasonable. Upon Defendants' final payment of the settlement funds, the parties ask that this Court terminate this action.

2. **Background of the Lawsuit**

Plaintiff, Anass Nazih, worked as a server at Café Istanbul of Columbus, LLC from 2014 to September 2017. He brought this case on behalf of himself and similarly situated servers to recover unpaid wages under the FLSA and Ohio law against the restaurant and its owners Osman Saki, John Betkas, and Ismail Altinok. On November 3, Plaintiff, Saad Bouhajra, filed a consent to join the lawsuit against Defendants. *See* Doc. 3. Plaintiffs claim that Defendants required servers to work off the clock and, for that and other reasons, failed to properly claim a tip credit from servers' wages.

Plaintiffs promptly moved to send notice of the action to similarly situated employees. Doc. 4. On September 18, the Court granted the motion. Doc 44. Plaintiffs sent notice to the 24 individuals on the class list provided by Defendants. One individual, Plaintiff 3, filed a consent form with the Court. *See* Doc. 56.[1]

---

[1] Pursuant to the Court's ruling in its Order granting conditional certification (*see* Doc. 44), Plaintiffs filed Plaintiff 3's consent form redacted and pseudonymously, but provided a copy of her consent form to Defendants unredacted and without a pseudonym.

Defendants moved for summary judgment on August 1, 2018. *See* Doc. 35. The Court held Defendants' summary judgment motion in abeyance pending additional discovery on August 20, 2018. *See* Doc. 38.

While all of this was taking place, the parties engaged in discovery. Plaintiffs requested and reviewed various types and formats of payroll and tip records provided by Defendants. Defendants took depositions of Mr. Nazih and Mr. Bouhajra. Plaintiffs took a limited Rule 30(b)(6) deposition of the corporate defendant, focused on the issue of document retention.

On December 11, 2018, the parties attended a mediation conducted by the Honorable Judge Mark R. Abel (ret.). With Judge Abel's guidance, the parties addressed the merits of the case, and, more importantly, the probability of collectability even if Plaintiffs' case was successful in obtaining a judgment. The mediation did not resolve the matter, however, it brought the parties closer to settlement. Following the mediation, the parties exchanged financial documents, and exchanged several proposals facilitated by Judge Abel and, ultimately, they entered into the settlement agreement attached hereto as Exhibit 1.[2]

3. **Summary of Plaintiffs' Claims**

Plaintiffs were ostensibly paid at the Ohio tip credit minimum wage rate for all hours worked. Doc. 1 at ¶ 90. Plaintiffs claim that Defendants were not permitted to take a tip credit from their wages under the FLSA and related Ohio wage and hour laws because they failed to meet the requirements for doing so. The requirements for taking a tip credit under the FLSA are:

(1) the employer must pay their tipped employees no less than $2.13 per hour;

(2) the credit taken for the employees' tips must not exceed the actual tips that the employee received;

---

[2] The parties are in agreement as to the Settlement Agreement and will file an executed Agreement in the next 14 days.

4

> (3) the employer must inform employees of the employer's intent to take the tip credit and the provisions of 29 U.S.C. § 203(m); and
>
> (4) the employer must allow the employee to keep all of their tips, subject to very specific exceptions relating to tip pooling.

29 U.S.C. § 203(m); 29 CFR § 531.59; *see also Meyers v. Copper Corp.*, 192 F.3d 546, 553-54 (6th Cir. 1999). Employers must "strictly observe" all of 20 U.S.C. § 203(m)'s requirements. *See* DOL Field Operations Handbook, 30d01(b). As the Fourth Circuit has held:

> What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit.

*Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). Plaintiffs allege Defendants failed to properly claim a tip credit for a number of reasons.

First, Plaintiffs allege that Defendants failed to inform them of their intent to take the tip credit as required by Section 203(m). The notice requirement is "strictly construed," and must be complied with even if the employee receives tips at least equivalent to minimum wage. *Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. Sept. 13, 2002); *see also Solis v. Min Fang Yang,* 345 Fed.Appx. 35, 38 (6th Cir. 2009) (holding that Defendants failed to provide tip credit notice where Defendants had explained that employees' pay would consist almost exclusively of tips, but did not discuss its minimum wage obligation or explain that they were applying a tip credit against that obligation). In order to properly inform an employee that you are claiming a tip credit from their wages, an employer must provide the amount of the cash wage that is to be paid, the additional amount wages are increased on account of the tip credit, which may not exceed the value of the tips actually received, and that all tips received must be retained by the

employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips. *See* 29 C.F.R. § 531.59. Plaintiffs claim Defendants failed to meet this requirement.

Second, Plaintiffs allege Defendants cannot claim a tip credit because they failed to actually pay the wage rate they promised to pay. *See*, *e.g.*, *Meetz v. Wisconsin Hospitality Group LLC*, No. 116-C-1313, 2017 WL 3736776, at *5 (E.D. Wisc. Aug. 29, 2107) (holding that employer could not retroactively claim a bigger tip credit than they claimed prospectively); *see also Ornelas v. Los Arrieros*, 232 F.Supp.3d 962, 970 (N.D. Ohio 2017) (holding that the failure to pay Ohio tipped minimum wage rendered employer ineligible for Ohio tip credit); *McFeeley v. Jackson St. Entm't, LLC,* 825 F.3d 235, 246 (4th Cir. 2016) (holding that failure to pay tip credit wage rate triggers tip credit violation). Specifically, Plaintiffs allege that they were required to work significant portions of their shift off the clock or clocked in under one of the owner's names. Additionally, Plaintiffs allege that some of the time for which they were clocked in was simply not paid out on their paychecks. As a result of this off the clock time, Plaintiffs' effective hourly wage was far below the wage rate Defendants claimed to pay them. As a result, Plaintiffs allege that Defendants were not permitted to take a tip credit. *See Ornelas*, 232 F.Supp.3d at 969-70.

Third, Plaintiffs allege that Defendants' tip pool was invalid. Plaintiffs were required to tip out a percentage of their sales to the house, which was said to be distributed to bussers. Plaintiffs allege that some of their tip money was shared with the restaurant owners themselves and with back of the house employees who were not permitted to share in the tip pool. *See Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 893 (D.MD. 2011) (stating "Congress, in crafting the tip credit provision of Section 3(m) of the FLSA did not create a middle ground allowing an employer

6

both to take the tip credit and share of the employees' tips."). In contrast, Defendants deny the existence of a tip pool violation.

Based on these allegations, Plaintiffs claim they are owed full minimum wage for all hours worked in Defendants' restaurant. Defendants deny Plaintiffs' allegations and claim that they have paid Plaintiffs properly at all times.

Plaintiffs allege that they are also entitled to an additional two times unpaid wages as damages under the Ohio Constitution, Article II, Section 34a, an additional one-time unpaid wages as liquidated damages under the FLSA, and to liquidated damages under the Ohio Prompt Pay Act, O.R.C. § 4113.15, if they could show that the wages owed were not "in dispute."[3]

The applicability of the additional damages amount would have depended on the Court's decision as to whether all forms of additional damages should "stack" on top of one another, or if they are only available in the alternative. *See, e.g., Evans v. Loveland Automotive Investments, Inc.*, 632 Fed. Appx. 496, 498 (10th Cir. 2015); *see also Morales v. Cancun Charlies Restaurant*, No. 3:07-cv-1836, 2010 WL 7865081, at *9 (D. Conn., 2010) ("Courts have held that plaintiffs should be able to recover liquidated damages simultaneously under the FLSA and the applicable state statute where the two statutes serve different purposes.").

In this case, liability is contingent upon on whether Plaintiffs can show they worked hours for which they did not receive wages, had tips misappropriated, and/or were not properly informed of the tip credit provisions of the FLSA. Each of these claims are fact-intensive. Further, Plaintiffs assert that Defendants records were inadequate because they did not log all of Plaintiffs' time

---

[3] If Prompt Pay Act liquidated damages do apply, the next question is how the liquidated damages are calculated. If each pay period is a separate violation, which is how the FLSA treats violations, then Plaintiff would arguably be entitled to $200 per pay period. If the violation is considered a continuing violation, Plaintiff would arguably be entitled to 6% interest on his unpaid wages.

7

worked, they destroyed tip records every couple of months, and they destroyed payroll records after an employee left their employ. Plaintiffs' position would be that when employers fail to keep proper records, employees are entitled to a presumption that their reasonable estimate is accurate. *See generally Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 601-02 (6th Cir. 2009). Accordingly, Plaintiffs' best evidence to prove damages is their reasonable estimate established through testimony. Mr. Nazih estimates that over approximately three years, he worked 5,998 unpaid hours. Mr. Bouhajra estimates that over approximately 15 months, he worked 2,276 unpaid hours. Plaintiff 3 estimates that over approximately five months, she worked roughly 120 unpaid hours. In total, using a "compromised" hourly rate of federal minimum wage ($7.25 per hour), Plaintiffs would be entitled to approximately $69,923.42 for hours worked off-the clock, plus additional damages as discussed above.

In addition to the above unpaid wages and damages, Plaintiffs also allege they are entitled to payment of their attorneys' fees and costs, which amount to roughly $55,399.10 in attorneys' fees and $2,377.28 in costs at the time of mediation. Based on this data, Defendants' total exposure for unpaid wages and attorney's fees, alone, was approximately $127,699.80 for the three Plaintiffs. However, if it was ultimately determined that Defendants properly paid Plaintiffs for all hours worked, informed them of the tip credit requirements, and permitted them to keep all of their tips, obviously, Plaintiffs would not be entitled to anything.

4. **Summary of Settlement Terms**

The parties have agreed to settle this matter for $30,000, payable by November 21, 2019. This settlement is fair, adequate, and reasonable because it provides substantial compensation to

Plaintiffs, and also recognizes the risk, uncertainty, and expense of going forward with a jury trial. Obviously, while this amount is far lower than the amounts Plaintiffs claim they are due, they have decided that a resolution now that pays them something is preferred over a judgment that they will have difficulty collecting.

From this settlement amount, $12,038.24 will be paid to Mr. Nazih; $5,471.93 to Mr. Bouhajra; and $729.59 to Plaintiff 3.[4]

Pursuant to Plaintiffs' contingency agreement with their counsel, Defendants will issue a check in the amount of $11,760.25 for attorneys' fees and costs. In exchange, Plaintiffs will dismiss their lawsuit with prejudice as to them only. Other employees are free to pursue their claims separately if they so desire.

The parties' settlement agreement is attached hereto as Exhibit 1.

Given the inherently factual nature of this dispute, the resolution of these issues would likely ultimately require a jury determination. This would be a time-consuming and costly endeavor for both parties.

Even if the jury found Defendants liable, the question of collectability would still remain. Defendants have raised a "poverty defense," claiming that a damage award in the high five-figure range would likely push them into bankruptcy. To verify these claims, Plaintiffs requested various pieces of financial information from Defendants. Based on Plaintiffs' counsel's review of that information, Plaintiffs believe it is unlikely that Defendants could afford to pay Plaintiffs anywhere close to the total damages calculated by Plaintiffs. In light of these concerns relating to

---

[4] Approximately 1/3 of the above amounts will be paid on a W2 as wages, the remaining 2/3 will be paid on a 1099 as damages.

collectability, Plaintiffs pursued a settlement that was based not on the merits of the case, but instead on Defendants' ability to pay.

### 5. The Standard for Settlement Approval

When a current or former employee alleges a violation of the FLSA, either the Secretary of Labor must oversee the payment of unpaid wages, or if the employee brings a private action and the parties settle the matter, a district court may enter a stipulated judgment after evaluating the parties' settlement terms for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982); *see also Vigna v. Emery Federal Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *2 (S.D. Ohio 2016); *Gentrup v. Renovo Serv., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio 2011). In evaluating an FLSA settlement and, presumably, an Ohio law wage and hour settlement (because the same considerations apply), the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is the product of a bona fide dispute, is fair, reasonable, and adequate, and was reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

### 5.1. The settlement is the product of a bona fide dispute.

The most important factor to consider when evaluating a proposed settlement is a Plaintiff's probability of success on the merits. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6.

In this case, Plaintiffs' success was not certain. Especially because their documents are lacking, Defendants could present testimony that Plaintiffs were compensated for all hours worked, that they were properly informed of the tip credit, and that tips were properly distributed to only tip-eligible employees. In fact, Defendants deny all claims irrespective of Plaintiffs' perceived absence of documents because Defendants used a standard, experienced payroll company whose representatives were not deposed, but were anticipated to testify that Plaintiffs were paid proper wages. As such, these claims are inherently factual in nature, and based, in substantial part, on the parties' testimony, especially considering the lack of complete records. There is a bona fide dispute as to both liability and damages under the FLSA and Ohio wage law.

With respect to Plaintiff's Prompt Pay Act claim, success is even less certain. This claim is contingent on the off-the-clock/tip credit claim. The difference is that the Prompt Pay Act claim also allows for the recovery of liquidated damages, but only if Plaintiffs can show there was no dispute regarding the unpaid wages. O.R.C. 4113.15(B). And, as stated above, Defendants will claim there was a bona fide dispute regarding both the existence of and amount of the unpaid wages.

Further, even if Plaintiffs did achieve success, it is still not clear whether Plaintiffs would recover any damages. A review of the financial documents reveals collectability is a serious concern in this matter. Defendants' finances indicate they are at risk for bankruptcy if Plaintiffs obtain a judgment. The prospect of Defendants' bankruptcy is in neither party's best interest. This factor supports settlement because it ensures each Plaintiff will receive some damages.

### 5.2. The settlement is fair, reasonable, and adequate.

Given the complexity of the legal and factual questions before the Court, the considerable time and expense required to litigate these questions, the uncertainty of success, and especially the

uncertainty of Defendants' ability to pay any larger amount, the settlement is fair, adequate, and reasonable. Continued litigation would have required substantial discovery, expense, and likely a jury trial. The settlement provides a benefit to Plaintiffs and avoids the time, expense, and uncertainty of moving forward with their claims through a jury determination.

### 5.3. The nature of negotiations.

The parties reached the above settlement after numerous discussions, exchanges of information, and additional negotiations. The parties negotiated at arm's length, through a multi-step process, relying substantially on the assistance of Judge Abel.

Defendants provided Plaintiffs' counsel with time and attendance detail reports, payroll records, sale reports, and labor forms. From there, Plaintiffs' counsel calculated the damages models discussed above. The parties then attended a mediation set through the Court's settlement week. With the assistance of Judge Abel, the parties were able to reduce the gap in settlement offers, based primarily on Defendants' financial viability. Following mediation, Defendants provided financial documentation to Plaintiffs' counsel that confirmed Plaintiffs' collectability concerns. From there, and with the continued assistance of Judge Abel, the parties reached the present settlement. This non-collusive, arms-length process allowed the parties to achieve a fair settlement agreement.

### 6. The payment of attorneys' fees and costs is reasonable.

Under the terms of the settlement agreement, Plaintiffs are entitled to an attorney's fee award. Plaintiffs have accrued $55,399.10 in reasonable attorneys' fees.[5] These fees were

---

[5] To the extent the Court would like to review Plaintiffs' counsel's billing records, Plaintiffs' counsel can provide them for in camera review.

12

reasonable in this case as Plaintiffs' counsel filed a number of motions, engaged in substantial discovery, engaged in settlement communications, and evaluated Defendants' financial position.

The attorneys' fees paid through this settlement are substantially less than Plaintiffs' counsel's lodestar. However, Plaintiffs' counsel is willing to accept the fees contemplated in the settlement because it allows Plaintiffs to obtain a benefit now. The risk of non-recovery makes a partial fee award "reasonable" in this case.

As such, Plaintiffs' counsel requests $10,000 as an attorneys' fee award, which is 1/3 of Plaintiffs' total settlement pursuant to their contingency fee agreement with Plaintiffs.

Plaintiffs' counsel also requests an additional $1,760.25 in expenses. These expenses mostly covered the filing fee, the costs of service of process, the costs of a Rule 30(b)(6) deposition, and the costs of sending notice to putative opt-in plaintiffs.

As such, Plaintiffs request an attorneys' fee award of $10,000, and an award of costs in the amount of $1,760.25.

7. **Conclusion**

Plaintiff asks that the Court grant final approval to the parties' Settlement Agreement and, upon Defendants' payment of the settlement funds, dismiss the lawsuit with prejudice as to Anass Nazih, Saad Bouhajra, and Plaintiff 3.

Respectfully submitted,

*/s/ Phil Krzeski*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC

13

4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

**Certificate of Service**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

*/s/ Phil Krzeski*
Philip J. Krzeski
